# WABASH, ST. LOUIS & PACIFIC RAILWAY CO.

## v.

## MARIA WEISBECK, Adm'x, etc.

1. NEGLIGENCE—SPEED OF TRAIN.—Under the circumstances of this case, the court is of opinion that although the train was running at a higher rate of speed than was allowed by the ordinance of the town, yet the deceased was guilty of such great negligence directly contributing to the result as ought to preclude a recovery.

2. WHEN ONE MAY RELY UPON PRESUMPTION THAT RAILROAD COMPANY WILL OBSERVE ORDINANCE.—Ordinarily one may presume that another will observe the law regulating his conduct and may act accordingly, and there may be cases where a person crossing a railroad track when he knows a train is coming, may rely upon the presumption and be guilty of no, or only slight, negligence; but this must depend upon circumstances, and such a rule can not apply when the calculation must necessarily be made with such nicety that the variation of a few seconds or the mistake of a few feet would inevitably be attended with fatal results, nor when it was evident that the train was, in fact, going much faster than allowed by ordinance. The law does not permit one to thus speculate with his own life.

3. RUNNING TRAIN FASTER THAN ALLOWED BY ORDINANCE—NEGLIGENCE.—The mere fact of running a train faster than allowed by ordinance would ordinarily be regarded simply as negligence, and when the injured party is himself at fault the doctrine of comparative negligence must be applied; and if the plaintiff did not exercise ordinary care, he can not recover unless under the circumstances the negligence of the defendant is willful or wanton in its character. The speed of the train alone can not be regarded as furnishing a sufficient reason for holding that the injury was willful or wanton.

APPEAL from the Circuit Court of Madison county; the Hon. WILLIAM H. SNYDER, Judge, presiding. Opinion filed April 18, 1884.

Mr. G. B. BURNETT, for appellant; that under the facts in this case, the negligence of deceased was such as to preclude a recovery even if the negligence of defendant was gross, cited C. & R. I. R. R. Co. v. Still, 19 Ill. 499; I. C. R. R. Co. v. Buckner, 28 Ill. 299; C. & R. I. R. R. Co. v. McKean, 40 Ill. 218; Gretzner's case, 46 Ill. 74; T. P. & W. Ry. Co. v. Riley, 47 Ill. 514; C. & N. W. Ry. Co. v. Sweeney, 52 Ill.

326; Manly's case, 58 Ill. 300; C., B. & Q. R. R. Co. v. Lee, 60 Ill. 501; C. & A. R. R. Co. v. Jacobs, 63 Ill. 178; C., B. & Q. R. R. Co. v. Nutzki, 66 Ill. 455; C., B. & Q. R. R. Co. v. Lee, 68 Ill. 576; Bell's case, 70 Ill. 102; I. C. R. R. Co. v. Godfrey, 71 Ill. 500; I. C. R. R. Co. v. Hall, 72 Ill. 222; Ill. Cent. R. R. Co. v. Goddard, 72 Ill. 567; C., B. & Q. R. R. v. Van Patton, 74 Ill. 91; T. W. & W. R. R. v. Jones, 76 Ill. 312; C. & N. W. Ry. Co. v. Hatch, 79 Ill. 137; R. R. I. & St. L. R. R. Co. v. Byam, 80 Ill. 528; C., B. & Q. R. R. Co. v. Harwood, 80 Ill. 88; C., B. & Q. R. R. Co. v. Damerell, 81 Ill. 450; I. C. R. R. Co. v. Hetherington, 83 Ill. 510; L. S. &. M. S. Ry. v. Hart, 87 Ill. 529; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; C., B. & Q. R. R. Co. v. Harwood, 90 Ill. 425; C. & N. W. Ry. Co. v. Dimick, 96 Ill. 42.

Messrs. Happy & Travous, for appellee; that a person about to cross a track has a right to suppose the railroad company will conform the speed of trains to the ordinance, cited Correll v. B., C. R. & M. R. R. Co., 38 Ia. 120; St. L., V. & T. H. R. R. Co. v. Dunn, 78 Ill. 197; P. C. & St. L. Ry. Co. v. Knutson, 69 Ill. 103; C. & A. R. R. Co. v. Engle, 84 Ill. 397; Wabash Ry. Co. v. Henks, 91 Ill. 412.

It is for the jury to determine whether the intoxication contributed to the injury, and if it did not it is of no importance and should have no weight in the case: Camp v. Wood, 76 N. T. 72; Ridley v. Lamb, 10 U. C. Q .B. 354; Ohagan v. Dillon, 42 N. Y. 456; Frazier v. Reinler, 2 Hun, 514; Ditchett v. R. R. Co., 5 Hun, 165; Healy v. Mayor, 3 Hun, 708; Stuart v. Machias Post, 48 Me. 477; Maguire v. R. R. Co., 115 Mass. 239.

Wall, P. J. The assignment of errors presents a number of questions as to the ruling of the court in admitting evidence, giving, refusing and modifying instructions, as well as to the merits of the case. After a careful examination we have thought it best only to determine whether there is a cause of action, and as there is no substantial conflict upon the main essential features of the case, we find no difficulty

in reaching a conclusion. The train was running through the village of Venice faster than was allowed by the ordinance, which was ten miles per hour. The rate of speed being variously estimated from twelve to twenty-five miles per hour. The proper signal by sounding the whistle was given, and the bell was rung continuously for half a mile before reaching the crossing where the collision occurred.

A person going west along the rock road using ordinary care, could have seen and heard the train a considerable distance before reaching this crossing, though at a point quite near the track the view south is obstructed by buildings.

This condition of things and the fact that must have been known to deceased, that at this hour through trains on this and two other roads were in the habit of passing at the full rate of speed allowed by ordinance, made it especially incumbent upon him to exercise care when about to cross the track. It is apparent, however, he did not discover the train until he had passed these buildings and was within 25 feet of the track, the train being 125 feet from the crossing. At this moment the engineer, perceiving the deceased, gave two sharp sounds of the whistle, whereupon the deceased, who was then moving slowly, began whipping his horses, passed rapidly upon the track, was struck by the engine and killed.

It is urged by counsel for appellee that the deceased was supposed to know the rate of speed which the train might lawfully use, and that he had a right to presume it would go no faster, and that he might calculate the distance, and if he saw that the train was at such a distance from the crossing that going at the proper rate of speed it would not get there before he could, and acting upon such calculation he attempted to drive over, and by reason of the unlawful speed at which the train was going he was caught, then the defendant company would be liable.

Ordinarily one may presume that another will observe the law regulating his conduct and may act accordingly, and there may be cases where a person crossing a railroad track when he knows a train is coming may rely upon the presumption and be guilty of no, or only slight negligence, but this must

depend upon circumstances and can not be permitted when the calculation must necessarily be made with such nicety that the variation of a few seconds or the mistake of a few feet would inevitably be attended with fatal results, nor when it was evident that the train was in fact going much faster than allowed by ordinance.

The law does not permit one to speculate in this way even with his own life, and if he does so and loses, the loss is his own. In the present instance, the train being 125 feet from the crossing would reach it in about eight seconds if going at the lawful rate, and if we assume the deceased to have calculated that by suddenly increasing his speed he could reach the track in five or six seconds, thus having two or three seconds to spare, yet if he calculated at all in this way he must have seen that the slightest error as to the distance, the speed of the train, or the nerve and speed of his team would certainly cost him his life. This theory of counsel permits him to ignore the palpable fact, and the main fact on which reliance is had for a recovery that the train was going faster than the assumed rate of speed. If one in such a situation can see that the speed is greater than lawful, he must act accordingly, and may not blindly calculate upon a fact which in the exercise of ordinary care he can perceive does not exist. We learn the rate of speed in this instance from the opinions of persons who were observing the train; how can we permit him to omit the duty of making the same observation when he was so near it, and had so much at stake?

It seems to us that it must be regarded as gross negligence to attempt to cross a track in front of a train under the circumstances as disclosed by the uncontradicted evidence in this case. We have no hesitation in saying that it is so hazardous and perilous as to make a recovery impossible, unless the action of the engineer in charge of the train was willful and wanton. This is not to be inferred from the proof, as it is clear that he could not have stopped in time to save the deceased, and the sole and only ground of negligence upon the part of the defendant company must be predicated upon the fact that the rate of speed was faster than prescribed by the ordinance.

Another and somewhat more plausible theory is advanced by the second instruction asked for plaintiff, which is, that, in a sudden emergency, when confronted by great danger, men may be excused for not exercising the deliberate judgment that might be expected in other and less exciting situations, and therefore the act of deceased in driving in front of the train was not so negligent as to forbid recovery. Had the deceased been brought into such a situation of sudden peril without fault of his own, perhaps such a consideration would be applicable; but as we read the evidence he was plainly wanting in ordinary care in not having discovered the approach of the train until he was so near the track. He must have known that trains were likely to pass at this time at a rapid rate of speed; and though the proof is clear that the whistle and bell gave the proper signals, he did not hear them nor discover the train.

It is in evidence that he had been drinking considerably that afternoon, and, in the opinion of some of the witnesses, was quite drunk. His failure to observe the train was from mere inattention, which may fairly be attributed to his intoxication, and this would account for his rashness and recklessness in driving in front of the train, thereby voluntarily incurring a danger such as would bring a shudder to the bravest man when in the possession of his sober senses. But does this absolve him from the exercise of care? Intoxication will not excuse a man for taking the life of another, nor should it excuse him for throwing away his own. The natural impulse of man in his normal condition would have been to stop.

Had he done so, or had he not urged his horses forward, he would have been safe. These two theories of counsel proceed upon opposite hypotheses, based on the same evidence: one implying a most deliberate and material calculation of chances; the other implying an utter absence of all deliberation and a complete loss of all reason and judgment.

We are unable to see how either can be tenable. The railroad company did violate the ordinance regulating the speed of trains, and by the provision of the statute, Sec. 87, Ch. 114,

Hurd's Ed., 1883, a presumption of negligence is thereby created which may be the foundation of recovery for loss, or injury occasioned by the train while engaged in such violation. The character or degree and the legal consequences of such negligence must depend upon circumstances, such as the nature of the locality, the crowded condition of the street, etc., but it was not intended by this legislative provision to absolve persons crossing the track from the duty of caring for their own safety. In some cases it has been said by the Supreme Court that the circumstances were such that a disregard of the ordinance would manifest a degree of willful and wanton negligence sufficient to render the company liable unless the person injured was himself guilty of gross or willful negligence.

But ordinarily the mere fact of running faster than allowed by ordinance would be regarded as negligence merely, and when the injured party is himself at fault, the doctrine of comparative negligence must be applied; and if the plaintiff did not exercise ordinary care he could not recover unless under the circumstances the negligence of the defendant is willful or wanton in its character.

In the case of I. C. R. R. Co. v. Hetherington, 83 Ill. 516, it is said that "While it is true the railroad company was running its train at a greater rate of speed than allowed by the ordinance of the city of Chicago, yet that fault did not relieve the deceased from the exercise of ordinary care, nor can the speed of the train alone be regarded as furnishing a sufficient reason for holding that the injury was willful or wanton."

See also Schmidt v. C. & N. W. Ry. Co., 83 Ill. 410, and Wabash Ry. Co. v. Henks, 91 Ill. 413, where it is assumed that the rule of comparative negligence should be applied to cases like the present. Indeed this rule was by the instructions given for plaintiff, recognized as applicable in this case, and it is evident the case was put to the jury as subject to the rule and to be governed by it. We are not disposed to overlook the violation of ordinances regulating the speed of trains within the limits of cities, towns and villages, nor do we ques-

tion the wisdom and sound policy of the statute on that subject above referred to; but giving due force to these considerations, we are of opinion that the deceased was guilty of such great negligence directly contributing to the result as ought to preclude a recovery in this suit. We therefore reverse the judgment of the circuit court.

Judgment reversed.